```
            UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


KIRK SWOPE,                        :    CASE NO. 1:10-CV-2541
                                   :
          Plaintiff                :    (Magistrate Judge Smyser)
                                   :
     v.                            :
                                   :
                                   :
CENTRAL YORK SCHOOL DISTRICT,      :
                                   :
          Defendant                :
```

## MEMORANDUM AND ORDER

The plaintiff, who has a learning disability, contends that the defendant denied him a free and appropriate public education while he was a student in the defendant's school district. He left the school district and enrolled in a private school after Eleventh Grade. He has since graduated from the private school. He is now seeking compensatory education from the school district to compensate for his purportedly inappropriate education in the school district from his Seventh Grade year through his Eleventh Grade year. We conclude that the claims regarding any years other than the plaintiff's Eleventh Grade year are barred by the statute of

limitations. We also conclude that the school district provided him with a free and appropriate public education during his Eleventh Grade year. Thus, we will enter judgment against the plaintiff and in favor of the defendant.

I. Procedural History.

The plaintiff commenced this action by filing a complaint on December 15, 2010. The complaint contains claims under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.,* under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and under the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* The claims under the Rehabilitation Act and the Americans with Disabilities Act were dismissed. Thus, only the IDEA claim remains.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.

2

The defendant filed an answer to the complaint. At the case management conference, the parties agreed that the case would be decided on the administrative record. The plaintiff then filed a motion for judgment on the administrative record, and that motion has been briefed.

II. IDEA Legal Standards.

Congress enacted the IDEA *inter alia* "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). The Act defines free appropriate public education (FAPE) as:

> special education and related services that--
> (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and (D) are

3

>       provided in conformity with the individualized
>       education program required under section 614(d)
>       [20 U.S.C. § 1414(d)].

20 U.S.C. § 1401(9).  In addition to the FAPE requirement, the IDEA provides that states must establish procedures that assure that, to the maximum extent appropriate, children with disabilities are educated with children who are not disabled. 20 U.S.C. § 1412(a)(5).

An individualized education program (IEP) is the primary vehicle for providing students with the required FAPE. *S.H. v. State-Operated School of Dist. of the City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003).  "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988).

"The Supreme Court has construed the statute's FAPE mandate to require 'education specially designed to meet the unique needs of the handicapped child, supported by such

4

services as are necessary to permit the child 'to benefit' from the instruction.'" *T.R. v. Kingwood Township Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000)(quoting *Bd. of Educ. of Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982)). An IEP must offer more than a trivial or de minimis educational benefit. *Id.* at 577. Although the state is not required to maximize the potential of a handicapped child, the education provided must be sufficient to confer an education providing "significant learning" and "meaningful benefit" to the child. *D.S. v. Bayonne Bd. of Educ.,* 602 F.3d 553, 556 (3d Cir. 2010). The educational benefit of the IEP must be gauged in relation to the child's potential. *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999). "To fulfill this mandate a district court must 'analyze the type and amount of learning' of which the student is capable." *Kingwood Twp., supra,* 205 F.3d at 578.

"The issue of whether an IEP is appropriate is a question of fact." *S.H., supra,* 336 F.3d at 271.

The Act imposes numerous procedural safeguards to ensure proper development of the IEP and to protect the rights of parents to challenge the IEP. See *Rowley*, *supra,* 458 U.S. at 205-07. A parent may seek an administrative due process hearing. *D.S., supra,* 602 F.3d at 557. School districts may also seek an administrative due process hearing. *Schaffer v. Weast,* 546 U.S. 49, 53 (2005). "A party to the due process hearing aggrieved by its outcome has the right to bring a civil action challenging the decision in any state court of competent jurisdiction or in a federal district court, without regard to the amount in controversy." *D.S., supra,* 602 F.3d at 558 (citing 20 U.S.C. § 1415(i)(2)). The burden of proof is on the party seeking relief. *L.E. v. Ramsey Bd. of Educ.,* 435 F.3d 384, 391-92 (3d Cir. 2006).

In actions brought under the IDEA, "the court -- (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

6

The court is to apply a modified *de novo* standard of review. *S.H., supra,* 336 F.3d at 270.  In reviewing the decision of a state agency under the IDEA, the district court must make its own findings by a preponderance of the evidence. *Shore Regional High School Bd. of Educ. V. P.S.,* 381 F.3d 194, 199 (3d Cir. 2004).  But, in order to prevent district courts from imposing their own views of preferable educational methods on the states, the court must give "due weight" to the administrative proceedings. *Rowley*, *supra,* 458 U.S. at 205-06.  "Under this standard, '[f]actual findings from the administrative proceedings are to be considered prima facie correct,' and '[i]f a reviewing court fails to adhere to them, it is obliged to explain why.'" *Shore Regional, supra,* 381 F.3d at 199 (quoting *S.H., supra,* 336 F.3d at 271).  The court must accept credibility determinations made by the state agency unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion. *Id.*  "In this context the word "justify" demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." *Id.*  An appellate court reviews the district court's factual findings for clear error. *Id.*  A finding of

fact is clearly erroneous when, after reviewing the evidence, the court is left with a definite and firm conviction that a mistake has been committed. *Id.*

III. Discussion.

The Hearing Officer held a hearing in six sessions between March and July of 2010.  During the hearing, she ruled that claims that arose before January of 2008 are barred by the statute of limitations.  After the hearing, she issued a written decision concluding that the district provided the plaintiff with a FAPE during the 2007/2008 school year (Eleventh Grade) and that, therefore, the plaintiff is not entitled to either tuition reimbursement or compensatory education.

A. Statute of Limitations.

The plaintiff claims that the Hearing Officer erred in ruling that the statute of limitations barred claims based on events prior to the Eleventh Grade.

The IDEA contains a two-year statute of limitations, which requires a parent to request a due process hearing within two years of the date the parent "knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C). The statute of limitations does not apply if the parent was prevented from requesting a due process hearing because of

> (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent that was required under . . . [20 USCS §§ 1411 et seq.] to be provided by the parent.

*Id.*

The plaintiff quotes 20 U.S.C. § 1415(f)(3)(C)(ii) and contends that the two-year statute of limitations does not

9

apply because the defendant convinced the plaintiff's mother that there was no need for a reevaluation of the plaintiff and so prevented her from requesting a due process hearing.  But the plaintiff has not presented any evidence that the defendant withheld any information that was required to be provided to his mother.  And there is evidence in the record that the defendant offered the plaintiff's mother notice of the procedural safeguards applicable under the IDEA.  Thus, 20 U.S.C. § 1415(f)(3)(C)(ii) is not applicable.

Although not specifically argued by the plaintiff, it appears that the plaintiff may implicitly be arguing that 20 U.S.C. § 1415(f)(3)(C)(i) is applicable.  But the plaintiff has not pointed to a specific misrepresentation on the part of the defendant that it had resolved the problem forming the basis of his claim.  Thus, 20 U.S.C. § 1415(f)(3)(C)(i) is not applicable.

The plaintiff has not specifically argued, but may be implicitly arguing, that because the district had told the plaintiff's mother that there was no need to reevaluate him and

that he was making progress, the plaintiff's mother did not know and did not have a basis to know that the plaintiff was not receiving a FAPE. But the record belies that contention. There is evidence of the mother's dissatisfaction with the defendant's actions regarding the plaintiff's education going back years. Also, the mother had received the plaintiff's standardized test scores showing significant problems. So the contention that the mother did not know and did not have a basis to know of the actions now forming the basis of the plaintiff's complaint would not be sustainable.

We agree with the Hearing Officer that the statute of limitations barred claims based on events prior to January of 2008.

B. Compensatory Education.

The plaintiff contends that he never requested tuition reimbursement and that the Hearing Officer erred in making a decision regarding tuition reimbursement. He further contends

11

that the Hearing Officer erred in failing to award him compensatory education. In fact, he contends that the Hearing Officer became confused with the tuition reimbursement issue and completely failed to address the compensatory education issue.

We agree with the plaintiff that because he was not requesting tuition reimbursement, the Hearing Officer erred in addressing the issue of tuition reimbursement. But that error was harmless. We can simply disregard the Hearing Officer's finding regarding tuition reimbursement. We disagree with the plaintiff's contention that the Hearing Officer failed to address the issue of compensatory education. She recognized that the plaintiff was seeking compensatory education, and concluded that his claim for compensatory education should be denied.

If a student has been denied a FAPE, the court may award compensatory education to account for the period that the student was denied a FAPE. *Mary T. v. School Dist. of Philadelphia,* 575 F.3d 235, 249 (3d Cir. 2009). Compensatory

12

education is designed to require school districts to pay expenses that they should have paid all along. *Id.*

Some of the Hearing Officer's discussion dealt with the similarities between the plaintiff's public and private school placements, and she concluded that the plaintiff received similar services in both the public and private schools. Because of the similarities between the two placements, she reasoned, if the private school provided a FAPE to the plaintiff then so had the defendant and if the defendant failed to provide the plaintiff with a FAPE then so had the private school. That reasoning, or course, does not answer the question whether the defendant in fact had provided the plaintiff with a FAPE. But the Hearing Officer also reasoned:

> There is substantially more evidence in the record establishing that the District provided Student with appropriate services that resulted in meaningful progress in light of Student's cognitive potential, including the private school's evaluation during the 2008/2009 school year. (FF 31) The foregoing discussion, however, is sufficient to determine that Parent's claims for both tuition reimbursement and compensatory education must be denied.

13

Hearing Examiner Decision at 17. The Hearing Officer found that the school provided appropriate services given the plaintiff's cognitive potential; accordingly, we have no doubt that the Hearing Officer found that the defendant had provided a FAPE to the plaintiff during his Eleventh Grade year. We must determine whether that finding is correct.

The Hearing Officer made the following findings of fact about the plaintiff's Eleventh Grade year in the district.

The IEP, as developed in May of 2007, included goals for writing and self-advocacy. *Hearing Officer Finding of Fact # 11.* Special education services were to be delivered in both regular education classes and in the resource room for a combined total of 7.6 hour/weeks, with three hours provided in the regular education setting and 4.6 hours provided in a segregated setting. *Id.* Specially designed instruction included test taking accommodations, such as a separate room, extended time, and no deductions for spelling errors. *Id.* at 12. Specially designed instruction also included assistance with editing of writing assignments, study guides to prepare

14

for tests, intermittent deadlines on long-term projects, copies of notes upon request, preferential seating, and assistance with reading above the 7/8th grade level. *Id.* Further, the IEP provided that if the plaintiff's grades were to drop below a 2 (c) level in any class or if the plaintiff were to have more than two missing assignments contact would be made with the plaintiff's case manager and/or parent. *Id.* Also the IEP team was to reconvene within the first four weeks after the beginning of the school year if the plaintiff was failing in his math/science class. *Id.*

The plaintiff followed a modified Eleventh Grade curriculum in English. *Id.* at 13. He was enrolled in regular education classes for all of his other courses, but he had the additional support of an instructional aide in the regular classroom. *Id.*

The plaintiff's combined math/science class was a regular education course designed for students who had difficulty in those subjects. *Id.* at 14. The class was taught by both a math teacher and a science teacher and was taught at

15

a slower pace. *Id.* The plaintiff's IEP team believed that he might do better in a class that provided hands-on experiences characteristic of that class. *Id.*

The plaintiff, however, did not relate well on a personal level to the math/science class teachers. *Id*. at 16. He did not like accepting help from teachers he believed did not personally care about him. *Id*. Despite considerable individualized in-class support, the plaintiff began to struggle in the math/science class early in the school year. *Id.* at 15. His performance did improve after the teachers adjusted the extended-time policy to permit more time to complete missed work. *Id*.

The IEP team met in early October of 2007 to revise the plaintiff's IEP. *Id*. at 17. The specially designed instruction section of the IEP was amended to added that the plaintiff was to receive clarification of instructions, prompts to remain on task, and more support for organization to be provided during the academic prep period. *Id*.

16

The plaintiff's teachers generally reported that he lacked motivation and that his lack of motivation was shown through missed assignments, lack of engagement in academic classes, and refusal to attend academic prep classes to take advantage of the assistance available there. *Id*. at 18.

The plaintiff completed transition surveys in 10th and 11th grades indicating that he was interested in attending college and specifying graphic design as a career interest. *Id*. at 23. The transition section of the plaintiff's Eleventh Grade IEP listed attending technical/trade school to prepare for a career in sign-making as the plaintiff's immediate post-secondary outcome. *Id*. at 24. Activities to prepare for that outcome included courses in graphic design, architectural design, and architectural and mechanical drafting. *Id*.

At the end of the 2007/2008 school year, the plaintiff's cumulative grade point average was 2.11. *Id*. at 41. The plaintiff's scores for the Eleventh Grade Pennsylvania System of School Assessment, taken before leaving the district in the spring of 2008 and reported in the fall of 2008, were

*below basic* for math, were *basic* for reading and science, and were *proficient* for writing. *Id*. at 40.

The above findings of fact of the Hearing Officer are supported by the record, and we adopt those findings. Contrary to the plaintiff's contentions, we do not find that the district was just warehousing the plaintiff, that it did not provide individualized instruction for the plaintiff, or that it failed to provide transitional planning for the plaintiff. Based on the findings of the Hearing Officer combined with the credible testimony that the IEP was implemented and that the plaintiff made progress as reflected in his grades (but not in his standardized test scores), we conclude that the plaintiff received a FAPE during his Eleventh Grade year in the district. Thus, he is not entitled to compensatory education.[1]

---

1. "[C]ompensatory education is not an available remedy when a student has been unilaterally enrolled in private school." *P.P. v. West Chester Area School Dist.,* 585 F.3d 727, 739 (3d Cir. 2009). After his Eleventh Grade year in the district, the plaintiff was unilaterally enrolled in a private school. Thus, compensatory education is not available after the 2007/2008 school year.

IV. Order.

**IT IS ORDERED** that the plaintiff's motion (doc. 28) for judgment on the administrative record is **DENIED** and that judgment in favor of the defendant shall be entered. The Clerk of Court is directed to enter judgment against the plaintiff and in favor of the defendant.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: January 3, 2012.